AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the
Northern District of New York

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **v.** | ) | |
| MAXIMILIEN R. REYNOLDS | ) | Case No. 3:18- MJ-139 (TWD) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant(s)** | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.  On

or about the date(s) of March 7, 2018 in the county of Tompkins in the Northern District of New York the

defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 USC § 5861(d) (two counts) | Possession of a Unregistered Destructive Device/Silencer |
| 18 USC § 922(a)(6) and 2(a) and 2(b) | False Statement in Acquisition of a Firearm |
| 18 USC § 924(a)(1)(A) and 2(a) and 2(b) | False Statement in Required Firearm Record |

This criminal complaint is based on these facts:
See attached Affidavit in Support of Criminal Complaint

☒    Continued on the attached sheet.

_____
Complainant's signature

Derek Valgora, Special Agent, ATF
_____
Printed name and title

Sworn to before me and signed in my presence.

Date: March 15, 2018

_____
Judge's signature

City and State:    Syracuse, New York

Hon. Thérèse Wiley Dancks, U.S. Magistrate Judge
_____
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | | | |
|---|---|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No. | : 18-MJ- | (TWD) |
| | ) | | | |
| **v.** | ) | | | |
| | ) | | | |
| MAXIMILIEN R. REYNOLDS, | ) | | | |
| | ) | | | |
| | ) | | | |
| **Defendant.** | ) | | | |

## AFFIDAVIT

CITY OF SYRACUSE       )
COUNTY OF ONONDAGA ):ss
STATE OF NEW YORK     )

## Affidavit in Support of a Criminal Complaint

### Introduction

Derek Valgora, being duly sworn, do herby depose and say that:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives
   (ATF), and have been since January 2000. I am currently assigned to the ATF Syracuse,
   New York Field Office. Prior to that, I worked for the United States Immigration &
   Naturalization Service for approximately 8 years. I have in excess of 25 years experience
   working in federal law enforcement. During my tenure as an ATF agent, I have
   conducted and participated in numerous investigations, which have resulted in the arrest
   and prosecution of individuals who have committed violations of federal law, including,
   explosives investigations, arson, firearms offenses, and illegal firearms trafficking. I
   have also completed the ATF Certified Explosives Specialist program that required
   completion of over 300 hours of specialized training related to explosives in conjunction

with two years of on the job training in the identification, handling, disposal and manufacture of explosives.

2. I am currently assigned to the investigation of Maximilien R. REYNOLDS. This affidavit is based upon my personal knowledge and observations as well as those of FBI Special Agents, local law enforcement officers, and others. This affidavit contains information for a showing of probable cause that the referenced federal statutes were violated by the defendant, as discussed below, but is not intended to convey all facts of the entire investigation.

3. This affidavit is in support of an application for a criminal complaint charging Maximilien R. REYNOLDS  for  possession of an unregistered destructive device in violation of Title 26, United States Code, Section 5861(d) (Count1), Possession of an unregistered silencer, in violation of Title 26, United States Code, Section 5861(d) (Count 2),

4. This affidavit for a criminal complaint also supports charging Maximilien R. REYNOLDS for making a false statement in connection with the acquisition of a firearm, in violation of Title 18, United States Code, Sections 922(a)(6), and 2(a) & (b) (Count 3), and making a false statement in required records of a federal firearms licensee in connection with the purchase of a firearm, in violation of Title 18, United States Code, Section s 924 (a)(1)(A) and 2(a) and (b).

5. Pursuant to Title 26, United States Code, Sections 5845(a) and 5845(f), a "firearm" under this section includes "destructive devices" as well as "silencers."  The definition of "destructive devices" includes a "bomb" under 5845(f)(A).  The definition of a "firearm silencer and firearm muffler" includes any device for silencing, muffling, or

2

diminishing the report of a portable firearm as under Title18, United States Code Section 921(a)(24).

Facts in Support of the Criminal Complaint

6. On March 7, 2018, at approximately 9:16 PM, I was contacted by FBI Special Agent Bomb Technician (SABT) D. Acquavella who advised that he and the New York State Police (NYSP) Bomb Disposal Unit were en route to an off-campus apartment near Cornell University, located at 111 Dryden Road, Apt 8K, Ithaca, New York, in order to check the apartment for possible explosive materials.

7. SABT Acquavella stated that officers from the Ithaca Police Department (IPD) and local FBI agents assigned to Ithaca had responded to the apartment earlier that day (at approximately 2:00 pm) in order to make contact with Maximilien R. REYNOLDS, the occupant of the apartment. Maximilien R. REYNOLDS had earlier purchased firearms ammunition, along with camping gear, drill bits, miscellaneous tools, hacksaw blades, knives, and some additional items that were deemed suspicious by an employee of the Wal-Mart store in Ithaca, New York, who contacted the IPD. The IPD and FBI were able to determine that the items in question were purchased at Wal-Mart by Maximilien R. REYNOLDS using a gift card. Records checks by the same investigators revealed that Maximilien R. REYNOLDS, age 19, currently resides at 111 Dryden Avenue, apartment 8K, Ithaca, New York, and was operating a 2017 Subaru registered to his mother in New Jersey. Subsequent investigation confirmed that he has previously been enrolled as a student at Cornell University, but is temporarily on a leave of absence and taking classes at Tompkins-Cortland Community College.

3

8. It was later learned that Maximilien R. REYNOLDS had previous contact with the Ithaca Police Department in June of 2016 when he was detained under the Section 941 of the New York State Mental Hygiene Law.

9. Ithaca Police Investigator Justin Williams, FBI Special Agents David Schutz and Joel Mercer went to Maximilien R. REYNOLDS apartment and spoke to his girlfriend, N.H., who said that Maximilien R. REYNOLDS was not home. N.H. invited Inv. Williams and the two FBI Special Agents in to the interior of the small apartment where they could see that it was in severe disarray, with random piles of clothing, food, laboratory glassware, and others items strewn about. What appeared to be mathematical writings were written on the west facing windows of the apartment in red ink.   Some food was present on a bed, which N.H. advised she had just heated up to consume.

10. N.H. identified herself as the girlfriend of Maximilien R. REYNOLDS and advised that he was not at home and may be at Tomkins-Cortland Community College, where he is taking a class that meets on Wednesdays. In the discussion that followed, she advised that she was somewhat concerned about Maximilien R. REYNOLDS, who seemed to her to be manic, not taking his medications, and getting very little sleep. While discussion was taking place, FBI Special Agent Joel Mercer observed in plain view an item in the small apartment that appeared to be a bullet resistant vest. N.H. permitted this to be looked at more closely at which time it was confirmed to be a bullet resistant vest. Strewn throughout the apartment in plain view were numerous items of camouflage or military- style clothing as well as tactical type items, such as knives, flashlights, and what appeared to be a military style gas mask. FBI Special Agent Schutz asked N.H. if she would permit a search of the apartment. N.H. initially consented, but then said that

4

she wanted Maximilien R. REYNOLDS to provide consent as it was his apartment even though she had an access key and was a frequent visitor. IPD Investigator Justin Williams and FBI Special Agents Schutz and Mercer left the apartment, asking N.H. to contact Special Agent Schutz by telephone, should Maximilen R. REYNOLDS return.

11. At approximately 4:45 pm, FBI Special Agent Schutz contacted N.H. by telephone. N.H. advised she had spoken to Maximilien R. REYNOLDS by telephone and she anticipated him arriving at his apartment soon. Approximately one hour later, FBI Special Agents Mercer and Schutz returned to 111 Dryden Road Apartments and met with N.H. who telephoned Maximilien R. REYNOLDS, who advised he would be returning home shortly.

12. Shortly thereafter, Maximilien R. REYNOLDS arrived at the apartment complex and met with Investigator Williams and FBI Special Agents Schutz and Mercer, who identified themselves as law enforcement officers. Maximilien R. REYNOLDS voluntarily consented to speak with them and accompanied them to FBI Special Agent Schutz's FBI car. In the ensuing discussion Maximilien R. REYNOLDS acknowledged that he had purchased some ammunition and other items at Wal-Mart earlier in the day. After initially denying that he had any weapons in his apartment other than knives, he stated that it also contained a rifle. He said this after it was brought to his attention that he had purchased a quantity of ammunition at Wal-Mart earlier in the day. Maximilien R. REYNOLDS said that he had purchased the rifle from a Tompkins County federally licensed firearms dealer, which he identified. Reynolds said that he had purchased the hacksaw blade and other equipment to shorten the barrel of the rifle. He thereafter provided both verbal and written consent to search his apartment and advised that he no

5

longer wanted to possess the rifle or any other dangerous weapons or items in his apartment and gave permission for Investigator Williams to take those items into his custody.

13. Maximilien R. REYNOLDS advised that the rifle was in a bag in the apartment, which was located and recovered, being a Savage MSR-15 Patrol rifle, caliber .223/5.56 mm, bearing serial number 03-005856. Also located was what appeared to be a homemade silencer for a firearm. This was shown to Maximilien R. REYNOLDS, who was asked if it was a silencer. REYNOLDS responded in the affirmative by nodding his head.

14. Maximilien R. REYNOLDS voluntarily agreed to be taken to the Cayuga Medical Center for admission and psychiatric evaluation and was transported there by police.

Search of 111 Dryden Avenue, Apartment 8K/ ATF Special Agent Valgora

15. On March 7, 2018, I responded to 111 Dryden Avenue, apartment 8K, Ithaca, NY and made contact with NYSP Bomb Technician Gardiner. Together, we made an initial assessment of the apartment. Due to the presence of numerous labeled containers of chemicals commonly used in the manufacture of homemade explosives (HME) and the presence of other unknown substances, it was decided to wait until further resources arrived in order to conduct a complete search of the apartment. After SABT Acquavella and NYSP Bomb Technician Smoulcey arrived, the apartment was searched. Several consumer fireworks items were located within a plastic bin in the apartment, including a fireworks "mortar" round that appears to have had shotgun shell pellets taped to the outside of the device to provide fragmentation. Based on my training and experience,

6

your affiant observed that that this device is very similar to, and was likely made from, a consumer firework "mortar" round approximately 4 inches in length and approximately 1 3/4 inch in diameter that is designed to be propelled into the air from an explosive charge at the base of the round which is normally placed into a reloadable fireworks "mortar" launch tube. Upon reaching apex, the "mortar" round is designed to burst via a section of time fuse igniting an explosive charge within the round causing it to explode and scatter pyrotechnic stars or other effects contained within the round. The alleged destructive device clearly appears to have steel or lead shot similar to that used in shotgun shells affixed to the outside of the of the "mortar" round using black colored tape to hold it in place, as the outline of the small shot spheres is visible through the tape on the outside of the device.  Evidence of opened shotgun shells was also observed within the apartment. Your affiant knows that firework items normally do not have items affixed to them which might cause injury to people nearby.

16. The explosive powder lift charge normally present in the bottom of the "mortar" round in question had been removed leaving the end of a section of time fuse within the "mortar" round exposed. By lighting the exposed time fuse, a brief delay would be expected prior to the deflagration of the explosive charge within the round causing it to explode and propel the attached shot outwards as fragmentation

17. Consumer fireworks do not normally have fragmentation, which is designed to inflict injury or death. Therefore, this item appears to be an explosive bomb and as such is a firearm and destructive device as defined under Title 26, United States Code, Section 5845 (f)(1) and Title 18, United States Code, Section 921(a)(4)(A). As such, it is

7

unlawful to possess this destructive device unless it is listed in the National Firearms
Registry and Transfer Record.

18. Consumer fireworks "mortar" rounds in their original configuration that had not been
apparently modified and that were of the approximate same size and shape of the
suspected destructive device were also located in the same bin in the apartment.

19.  I also observed the homemade silencer recovered from the apartment. It is constructed
from a NAPA brand fuel filter body approximately 10 inches in length and 2 inches in
diameter with machined metal ends affixed to it. Each metal end has a hole in the center
of it, with one end hole appearing to be threaded. Your affiant knows from training and
experience that a firearm silencer is a "firearm" under Title 26 United States Code
Section 5845(a)(7) and that per Title 18 United States Code Section 921(a)(24), a
firearms silencer means any device for silencing, muffling, or diminishing the report of a
portable firearm, including any combination of parts, designed, or redesigned and
intended for use in assembling or fabricating a firearm silencer.

20. This item is alleged to be a silencer and, as such, is a firearm as defined under Title 26,
United States Code, Section 5845 (a)(7) and Title 18, United States Code, Section
921(a)(24). As such, it is unlawful to possess this silencer unless it is listed in the
National Firearms Registry and Transfer Record.

21.  Your affiant knows through training and experience that it is a violation of Federal law
under Title 26 United States Code Section 5861(d) to possess a firearm, such as a
silencer and/or a destructive device, without said firearm being registered in the National
Firearms Registration and Transfer Record (NFRTR), which is maintained by ATF.  On

8

March 13, 2018, your affiant caused a search to be conducted of the NFRTR for any firearms registered by Maximilien R. REYNOLDS, DOB X/X/97, with negative results.

22. Also located were over 300 live rounds of firearm ammunition, much of which was contained in high capacity magazine clips that are compatible with the Savage MSR-15 Patrol rifle located in the apartment. Also located in the apartment were two sets of ballistic body armor, a gas mask, a metal or steel pipe with one endcap, and numerous labeled containers of chemicals consistent with pre-cursor chemicals used in the manufacture of homemade explosives. Also located were numerous ball barings of numerous sizes that could be used as fragmentation or shrapnel in an explosive device.

False Statements and the Purchase of the Rifle

23. On March 8, 2018, investigators went to a Tompkins County Federal Firearms Licensee (FFL) and verified via a completed ATF Form 4473, Firearms Transaction Record kept on the premises, that an individual hereinafter known as A.R. purchased a Savage MSR Patrol rifle, .223/5.56 mm bearing serial number 03-005856 from the a local Tompkins County Federally Licensed Firearms dealer.

24. On March 8, 2018, investigators unsuccessfully attempted to locate A.R. at his last known address. Later that evening A.R. contacted investigators after receiving a phone message asking A.R. to call them back. A.R. agreed to meet investigators at his apartment in Ithaca, New York.

25. Your affiant along with IPD Investigator Kevin McKenna and FBI Special Agent Schutz spoke with A.R. at his residence and asked him if he would voluntarily come to the Ithaca Police Department to speak with them, to which he agreed. A.R.was transported

9

the IPD where he voluntarily agreed to be interviewed. Prior to being interviewed, A.R. was advised of his *Miranda* rights and was reminded that he was not under arrest and was free to leave at any time. A.R. executed a form acknowledging that he understood his *Miranda* rights and was making a knowing and voluntary waiver of them. A.R. stated that he had no objection to speaking with Investigators and FBI Special Agents.

26. A.R. initially stated that he did not own any firearms nor had he ever purchased any firearms. A.R. subsequently said that he had indeed previously purchased a firearm. A.R. said that sometime in the autumn of 2017 he and Maximilien R. REYNOLDS discussed and planned the purchase of a firearm from a Tomkins County federally licensed dealer of firearms . A.R. said that Maximilien R. REYNOLDS had specifically directed him to purchase a firearm and that Maximilien R. REYNOLDS provided him with approximately $1,000.00 in cash to buy the firearm as well as a $200 cash payment for completing the transaction. A.R stated that Maximilien R. REYNOLDS told him that he (Maximilien R. REYNOLDS) was prohibited from purchasing the firearm himself, so he needed A.R.to buy the firearm for him.  A.R. went to the Tomkins County federally licensed dealer of firearms and purchased a semi-automatic rifle. As part of the purchase of this rifle, A.R. read and executed an ATF Form 4473, Firearms Transaction Record. On this form, A.R. falsely certified that he was the actual purchaser of the Savage MSR-15 Patrol rifle bearing serial number 03-005856. In fact, both Maximilien R. REYNOLDS and A.R. well knew that A.R. was not the actual purchaser of the firearm, which was Maximilien R. REYNOLDS.

27. The false certification by A.R. on the ATF Form 4473, Firearms Transaction Record that he was the actual purchaser of the rifle constituted a knowing false statement, and was

10

aided and abetted, commanded, adduced, procured and done with the knowledge and at the specific direction of Maximilien R. REYNOLDS. The ATF Form 4473 Firearms Transaction Record is required by federal law to be kept in the records of the federal firearms dealer.

28. On March 9, 2018 your affiant, federal and state bomb technicians and other investigators responded to I-DEAL Self-Storage, 2127 Slaterville Road, Ithaca, New York 14850, after it was learned that Maximilien R. REYNOLDS is currently renting two self-storage units there. A New York State Court authorized search warrant was obtained and executed for the two storage units used by Maximilien R. REYNOLDS. Pre-cursor chemicals frequently used in the manufacture of homemade explosives were located and seized within unit 256, as well as a small quantity of suspected smokeless powder, a consumer firework mortar round, and pyrotechnic fuse.

Conclusion

29. Your affiant submits that probable cause exists that Maximilien R. REYNOLDS is in violation of the federal criminal statutes set forth above and I request the Court authorize the filing of this criminal complaint and issue an arrest warrant so that Maximilien R. REYNOLDS may be brought to court for further proceedings in accordance with law.

Derek Valgora, ATF Special Agent

Sworn to and subscribed to before me this 15th day of March 2018

Hon. Thérèse Wiley Dancks
U.S. Magistrate Judge