IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    3:18-CR-321 (TJM) |
| | ) | |
| **v.** | ) | **Plea Agreement** |
| | ) | |
| **MAXIMILIEN R. REYNOLDS,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States

Attorney for the Northern District of New York, and defendant **MAXIMILIEN R. REYNOLDS**

(hereinafter "the defendant"), by and through the defendant's counsel of record, hereby enter into

the following plea agreement pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal

Procedure:

1) **The Defendant's Obligations:**

   a) **Guilty Plea:** The defendant will waive indictment and plead guilty to Counts 1 and 2 of

   the information in Case No. 3:18-CR-321 (TJM) charging False Statements During the

   Purchase of a Firearm and Willfully Causing an Act to be Done, in violation of 18 U.S.C.

   §§ 922(a)(6) and 2(b) [Count 1]; and Possession of Unregistered Firearms, in violation of

   26 U.S.C. § 5861(d) [Count 2].

   b) **Special Assessment:**   The defendant will pay an assessment of $100 per count of

   conviction pursuant to 18 U.S.C. § 3013.  The defendant agrees to deliver a check or money

   order to the Clerk of the Court in the amount of $200, payable to the U.S. District Court,

   at the time of sentencing.

   c) **Compliance with Other Terms of Agreement:** The defendant will comply in a timely

   manner with all of the terms of this plea agreement.

d) **Forfeiture:** Pursuant to Title 26, United States Code, Section 5872 and Title 28, United States Code, Section 2461(c) as set forth in Count Two, the defendant will consent to entry of an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the information described above, or to any substitute assets, or to a money judgment, all as more fully set out below:

(1) One (1) silencer; and

(2) One (1) destructive device;

e) **Abandonment:** the defendant agrees to abandon to the United States any title, ownership interest and/or possessory interest in the items set forth in Schedule A attached hereto.

f) **Access to Records:** The defendant will provide any privacy waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the defendant's financial disclosures. The defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information provided by the defendant to the U.S. Probation Office.

g) **No Transfer of Assets:** The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by this plea agreement and/or that may be imposed by the Court. In addition, the defendant promises not to make any such transfers in the future.

2) **The Government's Obligations:**

a) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges against the defendant based on conduct described in the information in Case No 3:18-CR-

321 (TJM) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," occurring before the date on which the defendant signs this agreement. This agreement does not prevent the government from seeking charges based on other conduct.

b) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all of the terms of this plea agreement.

3) **Potential Maximum Penalties:** The defendant understands that the Court can impose the following maximum penalties for the offenses to which the defendant agrees to plead guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

**As to Count 1:**

a) **Maximum term of imprisonment:** 10 years, pursuant to 18 U.S.C. §§ 922(a)(6) and 924(a)(2).

b) **Maximum fine:** $250,000.00, pursuant to 18 U.S.C. § 3571(b)(3).

c) **Supervised release term:** In addition to imposing any other penalty, the sentencing court may require the defendant to serve a term of supervised release of up to 3 years, to begin after imprisonment. See 18 U.S.C. § 3583. A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 2 years.

**As to Count 2:**

a) **Maximum term of imprisonment:** 10 years, pursuant to 26 U.S.C. § 5871.

b) **Maximum fine:** $250,000.00, pursuant to 18 U.S.C. 3571(b)(3).

c) **Supervised release term:** In addition to imposing any other penalty, the sentencing court may require the defendant to serve a term of supervised release of up to 3 years, to begin after imprisonment. See 18 U.S.C. § 3583. A violation of the conditions of supervised

release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 2 years.

4)      **Other adverse consequences:**   Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F below.

5)      <u>**Elements of Offense:**</u> The defendant understands that the following are the elements of the offenses to which the defendant agrees to plead guilty.   The defendant admits that the defendant's conduct satisfies each and every one of these elements.

**Count 1:**

   a) The defendant willfully caused another person to knowingly make a false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification to a federally licensed firearms dealer;

   b) The false statement or misrepresented identification was made in connection with the acquisition or attempted acquisition of a firearm; and,

   c) The statement was intended or likely to deceive such firearms dealer with respect to a fact material to the lawfulness of the sale of the firearm to the defendant.

**Count 2:**

   a) The defendant knowingly possessed one or more "firearms," as defined in the National Firearms Act, 28 U.S.C. § 5845;

   b) The National Firearms Act firearms possessed by the defendant were a silencer, as defined in 26 U.S.C. § 5845(a)(7) and 18 U.S.C. § 921(a)(24); a destructive device, as defined in 26 U.S.C. § 5845(a)(8) and (f)(1); and a Savage MSR-15 Patrol Rifle, caliber .223/5.56 mm, serial number 03-005856 with a barrel measuring less than sixteen inches in length, as defined in 26 U.S.C. § 5845(a)(3) and (4).

c) The defendant knew the characteristics of the silencer, destructive device, and short barreled rifle; and

d) The silencer, destructive device, and short-barreled rifle were not registered to the defendant in the National Firearms Registration and Transfer Record.

6)   **Factual Basis for Guilty Plea:** The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offenses to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to those offenses:

a) On or about November 28, 2017, the defendant gave another person, hereinafter referred to as CD-1, approximately $1000 to purchase a rifle on the defendant's behalf from a federally licensed firearms dealer in Tompkins County, New York.

b) At the request and direction of the defendant, CD-1 travelled to a federally licensed firearms dealer in Tompkins County, New York, where CD-1 completed an ATF Form 4473 Firearms Transaction Record, in which CD-1 knowingly falsely certified that CD-1 was the actual purchaser of an MSR-15 Patrol Rifle, caliber .223/5.56 mm, serial number 03-005856, when, in truth and in fact, the firearm was actually being purchased for the defendant with funds that the defendant supplied to CD-1.

c) Using funds provided by the defendant, CD-1 paid the federally licensed firearms dealer in Tompkins County, New York, for the MSR-15 Patrol Rifle, caliber .223/5.56 mm, serial number 03-005856. Upon receiving the rifle, CD-1 immediately left the premises and transferred it to the defendant.

d) The defendant then provided $200 to CD-1 as a fee for the purchase, on the defendant's behalf, of the MSR-15 Patrol Rifle, caliber .223/5.56 mm, serial number 03-005856.

5

e)   On March 7, 2018, in Ithaca, New York, the defendant possessed on his person a .25 caliber
     Bauer Firearms Corporation, semiautomatic pistol with an obliterated serial number.

f)   The .25 caliber Bauer Firearms Corporation semiautomatic pistol with an obliterated serial
     number was later recovered by law enforcement officers. The semiautomatic pistol was
     manufactured in Michigan and possessed by the defendant in Ithaca, New York, and
     therefore affected interstate commerce.

g)   On March 7, 2018, the defendant possessed at his apartment: one (1) device for silencing,
     muffling, or diminishing the report of a portable firearm, that is, a silencer consisting of a
     modified NAPA oil filter approximately eleven inches in length and two inches in diameter
     modified to contain eight (8) metal baffles with a threaded end-cap that facilitate its
     attachment to a firearm barrel; and one (1) destructive device, consisting of a cardboard
     tube, sealed at each end, wrapped with metal wire mesh, multiple metal number 6 shot size
     BBs and tape filled with a quantity of pyrotechnic (perchlorate/sulfur) explosive mixture
     with a short length of pyrotechnic fuse extending from one end.

h)   On that same day, the defendant also possessed at his apartment a semiautomatic Savage
     MSR-15 Patrol Rifle, caliber .223/5.56 mm, serial number 03-005856, with a barrel
     measuring eleven inches in length, two (2) .25 caliber semiautomatic ammunition clips,
     916 rounds of .223 caliber rifle ammunition, 135 rounds of 12 gauge shotgun ammunition,
     and the items listed on schedule A attached hereto.

i)   The silencer, the destructive device, and the semiautomatic Savage MSR-15 Patrol Rifle,
     caliber .223/5.56 mm, serial number 03-005856 with a barrel measuring less than sixteen
     inches in length belonged to the defendant and were not registered to him in the National
     Firearms Registration and Transfer Record.

6

j)  The Savage MSR-15 Patrol Rifle, caliber .223/5.56 mm, serial number 03-005856, was manufactured in Massachusetts and possessed by the defendant in Ithaca, New York, and therefore affected interstate commerce.

k)  The silencer and destructive device were involved in the offense of conviction set forth in Count 2 of the information. The defendant admits that he is the owner of that property.

7)  **Sentencing Stipulations:**

a)  The parties agree that, upon conviction by the defendant's guilty plea, the two counts in the information will "group" into a single group of closely related counts under U.S.S.G. § 3D1.2(d) for the purpose of calculating the defendant's offense level under the federal sentencing guidelines.

b)  The government maintains that the base offense level for this group of counts is 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(B), because (i) the offenses of conviction involved a semiautomatic firearm that was capable of accepting a large capacity magazine and firearms described in 26 U.S.C. § 5845(a); (ii) the defendant was a prohibited person, namely a drug user, at the time the defendant committed the offenses of conviction; (iii) after his guilty plea to Count One, the defendant will have been convicted under 18 U.S.C. 18 U.S.C. § 922(a)(6); and (iv) the defendant committed the offense of conviction in Count One with knowledge, intent, and reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person, namely the defendant. The defendant retains the right to contest the applicability of U.S.S.G. § 2K2.1(a)(4)(B).

c)  The parties agree that: two levels should be added to the base offense level pursuant to U.S.S.G. § 2K2.1(b)(1)(A) because the defendant possessed 4 firearms; an additional two levels should be added pursuant to U.S.S.G. § 2K2.1(b)(3)(B) because the defendant

possessed a destructive device; an additional four levels should be added pursuant to U.S.S.G. § 2K2.1(b)(4)(B) because the defendant possessed a .25 caliber Bauer Arms semiautomatic pistol with an obliterated serial number.;

d) The government will recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(a) if, (i) through the time of sentencing, the government is convinced that the defendant has demonstrated "acceptance of responsibility" for the offense(s) to which the defendant is pleading guilty and all relevant conduct, as defined in U.S.S.G. § 1B1.3; and (ii) the government does not determine that the defendant, after signing this agreement, committed any other federal, state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G. §3C1.1.

e) The government will move for a 1-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(b) if the government is convinced that the defendant has accepted responsibility within the meaning of U.S.S.G. §3E1.1(a) and further assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, and the defendant otherwise qualifies for such adjustment by having a combined offense level of 16 or more before receipt of any acceptance of responsibility adjustment under U.S.S.G. §3E1.1(a).

8) **Waiver of Rights to Appeal and Collateral Attack:** The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255,

8

to appeal and/or to collaterally attack the following (except that the defendant does not waive the right to raise a claim based on alleged ineffective assistance of counsel):

a) The convictions resulting from the defendant's guilty plea;

b) Any claim that the statutes to which the defendant is pleading guilty is unconstitutional;

c) Any claim that the admitted conduct does not fall within the scope of the statute;

d) Any sentence to a term of imprisonment of 57 months or less;

e) Any sentence to a fine within the maximum permitted by law;

f) Any sentence to a term of supervised release within the maximum permitted by law;

g) Any order of forfeiture or restitution imposed by the Court that is consistent with governing law and is not contrary to the terms of this agreement.

Nothing in this appeal waiver is meant to be or should be construed as a representation of or agreement concerning the appropriate sentence in this case.

_____

A. **Right to Counsel:** The defendant has a right to assistance of counsel in connection with settlement of this case and understands that right. Defense counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B. **Waiver of Trial-Related Rights:** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against compelled self-incrimination. The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **Court Not Bound by Plea Agreement:** This plea agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. The Court is neither a party to, nor bound by this Plea Agreement. The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office. If the Court rejects the provisions of this agreement permitting the defendant to plead guilty to certain charges in satisfaction of other charges, the Court will permit the defendant to withdraw the plea of guilty before sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

D. **Court Not Bound by Agreed-Upon Recommendations, Stipulations, and Requests:** If this agreement contains any provisions under Fed. R. Crim. P. 11(c)(1)(B) by which the government agrees to recommend, stipulates, or agrees not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the federal sentencing guidelines, or a policy statement, or sentencing factor does or does not apply, such a recommendation, stipulation, or request does not bind the Court, which may make independent factual findings by a preponderance of the evidence and may reject such recommendations, requests, and stipulations between the parties. If the Court rejects one or more recommendations, stipulations, or requests, the defendant is not entitled to withdraw the defendant's plea of guilty and is not released from the obligations described in this agreement. Under such circumstances, the government reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations, stipulations, or requests set out in this agreement.

E. **Sentencing:**

a. **Maximum terms of imprisonment:** The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement. If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other. Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively. *See* 18 U.S.C. § 3584.

b. **Mandatory minimum terms of imprisonment:** If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment. In such cases, the court must impose a term of imprisonment no less than the required mandatory minimum term unless an exception to that requirement applies. Such exception may be dependent on a motion by the government.

c. **Section 851 Enhancements:** The defendant understands that if the government has filed an information against the defendant as provided 21 U.S.C. § 851, alleging that the defendant has one or more final convictions for a felony drug offense, and, as part of this agreement, the defendant has admitted and/or affirmed that the defendant was so convicted, then, by pleading guilty, the defendant will lose the right to attack any sentence the court imposes by challenging any such prior conviction.

d. **Sentencing guidelines:**

   i. The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder. While the Court is not bound

to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

ii. Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court. Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

iii. Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines. If the presentence investigation reveals that the defendant's criminal history may support an offense level different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

e. **Factual findings:** The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay. The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

f.   **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence. In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding. For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government may introduce the defendant's statements into evidence in any prosecution.  If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement.  To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

g.   **Government's Discretion to Recommend a Sentence:**  Unless a stipulation in this agreement explicitly limits the government's discretion with respect to its recommendations at sentencing, this agreement does not prevent the government from urging the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies; from recommending a specific sentence within the applicable guidelines range as determined by the Court or as urged by the government; or, if the government deems appropriate, recommending that the Court impose a sentence above the applicable guidelines range.

13

h. **Sentencing-Related Information:** The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8. No stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence. The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report. The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

i. **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

F. **Other Adverse Consequences:** The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

a. Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

b. If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for

14

citizenship. If the defendant is a naturalized citizen, such conviction may result in denaturalization, followed by deportation or removal from the United States. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud. Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

c. A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable. It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea. The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G. **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18

U.S.C. § 3663A.  In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664.  In any case involving a conviction for a sexual exploitation offense in chapter 110 of title 18 of the United States Code, the Court must order restitution for the full amount of the victim's losses as determined by the court.  The victim's losses include, but are not limited to medical services related to physical, psychiatric, or psychological care; physical or occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees and other costs; and any other losses suffered by the victim as a proximate result of the offense.  The restitution payment will be in addition to any other civil or criminal penalty authorized by law.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

   a. The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

   b. The defendant consents to the entry of an order of forfeiture of the assets described above.

   c. The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents.  The defendant consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court.  The defendant understands that the government, upon entry of the preliminary

16

order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

d. Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture. Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e. In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party. The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f. The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g. The defendant waives the right to a jury trial on the forfeiture of assets. The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h. The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i. The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j. In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property. The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

I. **Determination of Financial Condition and Payment of Interest and Penalties:**

a. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

b. The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

c. The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

d. Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

## J. Remedies for Breach:

a. Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part.  In the event of such breach, the defendant will remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b. If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

i. To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement.  The defendant waives (gives up) any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement,

notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

ii. In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

iii. To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

iv. To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

v. To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

vi. To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

vii. To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K. **Limitations:** This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant. References to "the government" in this agreement refer only to that Office. This agreement does not bind any other federal, state, or local prosecuting authorities. Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative

20

proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

L. **Agreement Must be Signed; Modifications Must be Written or on the Record:** This agreement, to become effective, must be signed by all of the parties listed below.  No promises, agreements, terms, or conditions other than those set forth in this plea agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M. **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).


GRANT C. JAQUITH
United States Attorney


_____        2 October 2018
Richard Southwick                        Date
Assistant United States Attorney
Bar Roll No. 506265


_____        10/1/18
MAXIMILIEN R. REYNOLDS                   Date
Defendant

Kimberly Zimmer, Esq.
Attorney for Defendant
Bar Roll No.      505346

Raymond M. Schlather, Esq.
Attorney for Defendant
Bar Roll No.  501364

10|1|18
Date

27 September 2018
Date

# REYNOLDS

## SCHEDULE A

| Item # | Description |
|---|---|
| 000001 | Other: Chemicals:  Precursor chemicals, one (1) in quantity plastic jug, 1 gallon in size of liquid labeled evidence "Muriatic acid" |
| 000002 | Other: Chemicals precursor chemicals one (1) blue colored plastic bin of various labeled household chemicals |
| 000003 | Silencer: One suspected homemade silencer |
| 000004 | Documents:  Other documents, ATF Form 4473 completed by Aaron Reynolds for purchase of savage firearm dated 11/28/17 |
| 000005 | Explosives:  Destructive device, Qty: 1, Mea: each,  suspected destructive device |
| 000006 | Explosives: Low explosives, Qty: 1, Mea: each, suspected propellant sample taken from post disassembled suspected destructive device |
| 000007 | Explosives: Low explosives, Qty: 1, Mea: each, consumer firework 'mortar' round |
| 000008 | Explosives: Low explosives, Qty: 1, Mea: each, assorted consumer fireworks/pyrotechnics |
| 000009 | Explosives: Low explosives, Qty: 2, Mea: each, two glass test tube type containers containing suspected propellant |
| 000010 | Explosives: Low explosives, Qty: 93, Mea: grams, suspected explosive removed from item # 5 post disassembly |
| 000011 | Firearm: Rifle, MNF:  Savage, type: rifle, model: MSR-15 patrol, cal:  556, SN: 03-005856 |
| 000012 | Other:  Firearm parts and accessories, various firearms parts and accessories contained within a bag found in apartment of Maximilien Reynolds |

| Item # | Description |
|--------|-------------|
| 000013 | Ammunition: Ammunition, Qty: 1, MNF: Aguila, cal: 223 |
| 000014 | Explosives: Other explosive, Qty: 1, Mea: each, shotgun shell used as a container in suspected explosive device (post assembly) |
| 000015 | Explosives: Other explosive Qty: 1 Mea: each, length of suspected hobby fuse removed from item # 14 during disassembly procedure |
| 000016 | Explosives: Other explosive, Qty: 1, Mea: each, suspected propellant /energetic material that was removed from item # 14 prior to disassembly of that item. |
| 000017 | Explosives: Other explosive, Qty: 1, Mea: each, wooden tongue depressor used to field test burn sample of suspected propellant/energetic material (item # 16) |
| 000018 | Explosives: Other explosive, Qty: 2, Mea: each, consumer firework "mortar" round |
| 000019 | Explosives: Other explosive, Qty: 1, Mea: each, gas cartridge for rodent control |
| 000020 | Explosives: Other explosive, Qty: 1, Mea: each, suspected propellant/energetic material (retained sample), that was taken from item # 16 |
| 000021 | Firearm: Handgun, MNF: Bauer Firearms Corp., Type: Pistol, Model: 25SS, cal: 25, Fin: Stainless, SN: None |
| 000022 | Ammunition: Qty: 234 rounds, Type: "Aquila" Cartuchas Deportivas, cal: .223 |
| 000023 | Ammunition: Qty: 552 rounds, Type: LC17, cal: .223 |
| 000024 | Ammunition: Qty: 130 rounds, Type: Winchester, cal: .223 |
| 000025 | Ammunition: Qty: 135 rounds, Type: Winchester, cal: 12 Gauge |

## Record List - Total:78

| | | | | | | |
|---|---|---|---|---|---|---|
| 25056 | I18-03843 | 0 | | ACT | Seagate Portable Drive | LEO |
| 25057 | I18-03843 | 0 | | ACT | 32 GB DataStick Sport Flash | LEO |
| 25058 | I18-03843 | 0 | | ACT | External hard drive | LEO |
| 25059 | I18-03843 | 0 | | ACT | MacBook Pro | LEO |
| 25060 | I18-03843 | 0 | | ACT | MicroSoft Surface Laptop | LEO |
| 25061 | I18-03843 | 0 | | ACT | Leather Notebook | IP GRGE 3 |
| 25062 | I18-03843 | 0 | EVI | ACT | Metal vice clamp | IP GRGE 3 |
| 25063 | I18-03843 | 0 | EVI | ACT | Polo Duffle Bag | IP GRGE 3 |
| 25064 | I18-03843 | 0 | EVI | REL | Savage MSR 15 parts | LEO |
| 25065 | I18-03843 | 0 | EVI | ACT | Plastic Blocks for AR | IP GRGE 3 |
| 25066 | I18-03843 | 0 | EVI | ACT | Mesh bags | IP GRGE 3 |
| 25067 | I18-03843 | 0 | EVI | ACT | BB Gun, Files, 2 Knives | IP GRGE 3 |
| 25068 | I18-03843 | 0 | EVI | ACT | Tac Vector Optics laser site | IP GRGE 3 |
| 25069 | I18-03843 | 0 | EVI | ACT | 3 gas tubes for AR-15 | IP GRGE 3 |
| 25070 | I18-03843 | 0 | EVI | REL | Apple Iphone | LEO |
| 25071 | I18-03843 | 0 | EVI | REL | 3 Flash Drives | LEO |
| 25072 | I18-03843 | 0 | EVI | REL | 4 various key | IP GRGE 3 |
| 25074 | I18-03843 | 0 | EVI | ACT | note with storage unit info | IP GRGE 3 |
| 25073 | I18-03843 | 0 | EVI | REL | Phone accessory | LEO |
| 25075 | I18-03843 | 0 | EVI | ACT | 6" galvinized pipe with 1 end | IP GRGE 3 |
| 25076 | I18-03843 | 0 | EVI | REL | Phone accessory | LEO |
| 25077 | I18-03843 | 0 | EVI | ACT | CVS pill bottle | IP GRGE 3 |
| 25078 | I18-03843 | 0 | EVI | REL | MacBook Laptop Computer | LEO |
| 25079 | I18-03843 | 0 | EVI | REL | IPAD 64 GB | LEO |
| 25080 | I18-03843 | 0 | EVI | ACT | Molly Vest with Knife and Mag. | IP GRGE 3 |
| 25081 | I18-03843 | 0 | EVI | ACT | Interview of Aaron Reynolds | IP GRGE 3 |
| 25082 | I18-03843 | 0 | EVI | ACT | Folding Knife | IP GRGE 3 |
| 25083 | I18-03843 | 0 | EVI | ACT | Ball Barrings multiple sizes | IP GRGE 3 |
| 25084 | I18-03843 | 0 | EVI | ACT | Gas Mask | IP GRGE 3 |
| 25085 | I18-03843 | 0 | EVI | ACT | AR-15 Parts | IP GRGE 3 |
| 25086 | I18-03843 | 0 | EVI | ACT | AR-15 Parts | IP GRGE 3 |
| 25087 | I18-03843 | 0 | EVI | ACT | Fireworks Launcher | IP GRGE 3 |
| 25088 | I18-03843 | 0 | EVI | ACT | AR-15 short Barrel | IP GRGE 3 |
| 25089 | I18-03843 | 0 | EVI | REL | AR-15 parts | LEO |
| 25090 | I18-03843 | 0 | EVI | ACT | AR-15 parts , Barrel Wrenches | IP GRGE 3 |
| 25091 | I18-03843 | 0 | EVI | ACT | Ball barrings and leather case | IP GRGE 3 |
| 25092 | I18-03843 | 0 | EVI | ACT | Bullet proof vest heavy plate | LEO |
| 25116 | I18-03843 | 0 | EVI | ACT | Flare gun | IP GRGE 3 |
| 25119 | I18-03843 | 0 | EVI | ACT | Box of ball bearings | IP GRGE 3 |
| 25120 | I18-03843 | 0 | EVI | ACT | Flare ammo | IP GRGE 3 |
| 25121 | I18-03843 | 0 | EVI | ACT | Unknown powder (marquis) pois. | IP GRGE 3 |
| 25122 | I18-03843 | 0 | EVI | ACT | Green Molly Backpack | IP GRGE 3 |
| 25123 | I18-03843 | 0 | EVI | ACT | Glass vile with blue top | IP GRGE 3 |
| 25124 | I18-03843 | 0 | EVI | ACT | Oxygen bottle | IP GRGE 3 |
| 25125 | I18-03843 | 0 | EVI | REL | Map pro bottle with torch head | LEO |
| 25126 | I18-03843 | 0 | EVI | ACT | Newport box with ammo | IP GRGE 3 |
| 25156 | I18-03843 | 0 | EVI | REL | AR-15 Mags with Ammunition | LEO |
| 25157 | I18-03843 | 0 | EVI | REL | AR-15 Mags with Ammunition | LEO |
| 25158 | I18-03843 | 0 | EVI | REL | AR-15 Mags with Ammunition | LEO |
| 25159 | I18-03843 | 0 | EVI | REL | AR-15 homemade silcencer | LEO |
| 25161 | I18-03843 | 0 | EVI | ACT | Brake Free Lub, Canister | IP GRGE 3 |
| 25162 | I18-03843 | 0 | EVI | ACT | Bullet proof vest | IP GRGE 3 |
| 25177 | I18-03843 | 0 | EVI | ACT | AR 15 10 round mags | IP GRGE 3 |
| 25178 | I18-03843 | 0 | EVI | ACT | Syringe with shroom and h20 | IP GRGE 3 |
| 25189 | I18-03843 | 0 | EVI | ACT | Backpack | IP GRGE 3 |
| 25190 | I18-03843 | 0 | EVI | ACT | Blue clips multiple in bag | IP GRGE 3 |
| 25107 | I18-03843 | 1 | EVI | ACT | MSR Rifle accessory guide | IP GRGE 3 |

7/16/2018 1:14:53 PM

From:

| 25108 | I18-03843 | 2 | EVI | ACT | home made bullet | IP GRGE 3 |
|---|---|---|---|---|---|---|
| 25109 | I18-03843 | 3 | EVI | ACT | cut open flare round | IP GRGE 3 |
| 25104 | I18-03843 | 4 | EVI | ACT | Innert IED | LEO |
| 25110 | I18-03843 | 5 | EVI | ACT | cut open flare round | IP GRGE 3 |
| 25111 | I18-03843 | 6 | EVI | REL | one box of open shotgun shells | LEO |
| 25166 | I18-03843 | 6 | EVI | ACT | Wires, Lasers | IP GRGE 3 |
| 25167 | I18-03843 | 6 | EVI | ACT | Hack Saw | IP GRGE 3 |
| 25168 | I18-03843 | 6 | EVI | ACT | How To Books | IP GRGE 3 |
| 25169 | I18-03843 | 6 | EVI | REL | Multiple AR-15 Mags | LEO |
| 25170 | I18-03843 | 6 | EVI | REL | Shotgun shells | LEO |
| 25171 | I18-03843 | 6 | EVI | REL | AR-15 Mags and Ammo | LEO |
| 25172 | I18-03843 | 6 | EVI | ACT | SuiteCase with blasting caps | IP GRGE 3 |
| 25173 | I18-03843 | 6 | EVI | ACT | Tote with Ammo Boxes | IP GRGE 3 |
| 25112 | I18-03843 | 7 | EVI | ACT | Jar of BB's | IP GRGE 3 |
| 25105 | I18-03843 | 8 | EVI | ACT | Glass Vial with gun powder | LEO |
| 25113 | I18-03843 | 9 | EVI | ACT | Birdshot and shotgun primers | IP GRGE 3 |
| 25114 | I18-03843 | 10 | EVI | REL | Bin of unknown chemicals | LEO |
| 25115 | I18-03843 | 11 | EVI | ACT | hobby fuse | IP GRGE 3 |
| 25106 | I18-03843 | 12 | EVI | ACT | Mortar firework | LEO |
| 25117 | I18-03843 | 13 | EVI | REL | muriatic acid | LEO |
| 25118 | I18-03843 | 14 | EVI | ACT | duck tape | IP GRGE 3 |

RECEIVED

2018 OCT -2  PM 12: 32

US ATTY., SYRACUSE, NY